# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF IOWA
### EASTERN DIVISION

|  |  |  |
|---|---|---|
| CHRISTOPHER HARRINGTON, | ‖ | |
| Plaintiff, | ‖ | No. C05-2074 |
| vs. | ‖ | **ORDER** |
| WATERLOO POLICE DEPARTMENT and WATERLOO POLICE OFFICER S.D. BOSE, | ‖ | |
| Defendants. | ‖ | |

_____

## TABLE OF CONTENTS

**SUMMARY JUDGMENT** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

**STATEMENT OF MATERIAL FACTS** . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

**CONCLUSIONS OF LAW** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
    Res Judicata . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
    Negligence . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6
    42 U.S.C. § 1983 - Qualified Immunity . . . . . . . . . . . . . . . . . . . . . . 8
    Municipal Liability - Policy or Custom . . . . . . . . . . . . . . . . . . . . . 12

This matter comes before the court pursuant to Defendants' October 17, 2006 motion for summary judgment (docket number 8). The parties have consented to the exercise of jurisdiction by a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). The motion is granted in part and denied in part.

The plaintiff, Christopher Harrington, has brought claims against the Waterloo Police Department and Waterloo police officer S.D. Bose, arising from Harrington's September 2, 2003 arrest, detention, and forced medical treatment, i.e., stomach pumping. Mr. Harrington was arrested by Officer Bose after Bose received a report from undercover

police officer Corbin Payne advised Bose via radio that Harrington had just engaged in what appeared to be a narcotics transaction. Upon arrest, Harrington was taken to a hospital. At the hospital, Harrington's stomach was pumped because Officer Bose claimed that he had seen Harrington swallow an unknown quantity of crack cocaine. Harrington denies that he possessed, sold, or ingested any narcotics on the night in question. Specifically, Harrington alleges that the above described actions were negligent and violated his civil rights.

Defendants move for summary judgment, arguing that Harrington's alleged negligence claim is legally insufficient to amount to a Constitutional violation, and that Officer Bose is entitled to qualified immunity from Harrington's civil rights claim. The Waterloo Police Department contends that it is entitled to summary judgment in the absence of any liability on the part of Officer Bose, and because Harrington has come forth with no evidence of an unconstitutional municipal policy or custom, pursuant to which Officer Bose acted on the night in question. Harrington resists defendants' motion, arguing that defendants' motion is barred by res judicata, and arguing there is a factual dispute concerning both his negligence claim and the existence of either probable cause or reasonable probable cause to arrest and detain him.

## **SUMMARY JUDGMENT**

A motion for summary judgment may be granted only if, after examining all of the evidence in the light most favorable to the nonmoving party, the court finds that no genuine issues of material fact exist and that the moving party is entitled to judgment as a matter of law. Kegel v. Runnels, 793 F.2d 924, 926 (8th Cir. 1986). Once the movant has properly supported its motion, the nonmovant "may not rest upon the mere allegations or denials of [its] pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). "To preclude the entry of summary judgment, the nonmovant must show that, on an element essential to [its] case and on which [it] will bear the burden of proof at trial, there are genuine issues of material fact."

Noll v. Petrovsky, 828 F.2d 461, 462 (8th Cir. 1987) (citing Celotex Corp. v. Catrett, 477 U.S. 317 (1986)). Although "direct proof is not required to create a jury question, . . . to avoid summary judgment, 'the facts and circumstances relied upon must attain the dignity of substantial evidence and must not be such as merely to create a suspicion.' " Metge v. Baehler, 762 F.2d 621, 625 (8th Cir. 1985) (quoting Impro Prod., Inc. v. Herrick, 715 F.2d 1267, 1272 (8th Cir. 1983)). In applying these standards, the court must give the nonmoving party the benefit of all reasonable inferences to be drawn from the evidence. Krause v. Perryman, 827 F.2d 346, 350 (8th Cir. 1987).

## STATEMENT OF MATERIAL FACTS[1]

Waterloo Police Sergeant Corbin Payne has participated in the investigation of numerous cases involving the street-dealing of narcotics, and has attended numerous training programs involving identification of drugs and drug trafficking, including DEA Narcotics Investigation School and Advanced Tactical Operation for Narcotics Enforcement. Prior to September 2, 2003, the Waterloo Police Department had received numerous complaints of drug dealing and loitering near the Express Mart located on East Fourth Street in Waterloo, Iowa. On September 2, 2003, Sergeant Payne set up surveillance in the area of the Express Mart on East Fourth Street.

Sergeant Payne called Officer Bose and told him that he had observed Harrington hold several small white objects in his hand, consistent with crack cocaine, and engage in what appeared to be a narcotics transaction. In response, Officer Bose traveled to the Express Mart, confronted Harrington by grabbing him around the throat and accused him of having drugs. Harrington denies ever possessing, selling, or ingesting any drugs. Officer Bose handcuffed Harrington and searched him. No drugs were found on

---

[1] Where facts are in dispute, the version of the facts is taken in the light most favorable to Harrington, the nonmoving party.

Harrington's person. Sergeant Knief then arrived at the Express Mart.[2]  Officer Bose informed Sergeant Knief that Sergeant Payne had observed Harrington engage in what appeared to be a narcotics transaction and that Officer Bose, based on his own observations, had reason to believe that Harrington had ingested an unknown quantity of crack cocaine. Sergeant Knief told Officer Bose to transport Harrington to Allen Hospital due to the potential adverse effects of having ingested crack cocaine.

Upon arriving at Allen Hospital, Officer Bose and Sergeant Knief told the attending physician, Dr. Lamer, that Harrington had ingested an unknown quantity of what appeared to be crack cocaine. Based upon the information provided by the police officers, Dr. Lamer made the decision to pump Harrington's stomach. The hospital staff members did not speak to Harrington directly about his condition. Harrington denied ingesting any drugs and told a nurse at the hospital that he did not have any drugs in him. Harrington refused any medical treatment and refused to sign the consent and admission forms. Officer Bose and other officers held Harrington down, while he was still handcuffed, and a nurse sedated him. No crack cocaine was recovered as a result of Harrington's stomach pumping. A urine test was positive for marijuana and benzodiazepines, i.e., Valium, Ativan, Xanax, or Klonopin. The urine test was negative for cocaine.

The Waterloo Police Department offers race relations training, including diversity training and a conference on race relations. The Waterloo Police Department does not have a policy or custom of compelling physicians to pump the stomachs of persons in its custody.

---

[2]Whether Sergeant Knief arrived at the Express Mart or met Officer Bose and Harrington at the hospital is unclear as both parties have admitted to the other party's divergent version of events, i.e., Harrington admits that Sergeant Knief arrived at the Express Mart and defendants admit that Officer Bose transported Harrington to Allen Hospital, where they were met by Sergeant Knief. This discrepancy, however, is not determinative to the outcome of this motion.

## CONCLUSIONS OF LAW

### Res Judicata

The first issue to be resolved is Harrington's claim that defendants' motion for summary judgment on his negligence claim is barred under the doctrine of res judicata. Prior to this matter being removed to federal court, defendants' motion for summary judgment on Harrington's negligence claim was denied by the Iowa District Court in and for Black Hawk County. According to Harrington, res judicata prevents defendants from again moving for summary judgment on his negligence claim because (1) the prior judgment, i.e., order denying summary judgment, was rendered by a court of competent jurisdiction, (2) the prior judgment was a final judgment on the merits, and (3) the same cause of action and parties are involved in both cases. Harrington further argues defendants' assertions are barred by the res judicata principle of collateral estoppel/issue preclusion, which estops parties from re-litigating issues that have already been litigated and decided.

Defendants resist Harrington's res judicata argument. Defendants contend that Iowa case law is clear that a court's denial of a motion for summary judgment is not a final judgment on the merits.

A denial of a motion for summary judgment is not a "final judgment on the merits." See Iowa Elec. Light and Power Co. v. Lagel, 430 N.W.2d 393, 395-96 (Iowa 1988) (holding grant of partial summary judgment was not a final judgment or order); Snake v. State, 2001 WL 985052 *2 (Iowa Ct. App. 2001) (holding that the district court's denial of the State's initial motion for summary judgment was not a "final judgment on the merits"). The cases cited by Harrington do not support his argument as they involve the grant of a defendant's motion for summary judgment, dismissal of plaintiff's claim(s), and entry of final judgment against the plaintiff. Clearly, plaintiffs in such cases would be precluded from re-litigating their dismissed claims in a different forum. Res judicata does

not preclude defendants' motion for summary judgment on Harrington's negligence claim in this court.

Negligence

Defendants move for summary judgment on Harrington's negligence claim, arguing that it is well-settled that negligence alone cannot give rise to a constitutional violation. Harrington counters that he has established a genuine issue of material fact on his claim that Officer Bose was negligent in his handling of Harrington on the night of September 2, 2003.

Count I of Harrington's amended petition alleges that Officer Bose was negligent in detaining him "without probable cause and solely based upon [his] minority race." Harrington further alleges that he was transported to Defendant Allen Memorial Hospital, where he was forcibly medicated and his stomach was pumped without his consent and absent medical necessity. By subjecting Harrington to an unwanted and unnecessary medical procedure, he argues that defendants breached their duty of care of his safety and well-being.

It is well established that negligence will not suffice to establish liability under 42 U.S.C. § 1983. Therefore, any negligence claim would have to be brought pursuant to Iowa common law or statutory provision. Iowa Code Chapter 670, the Iowa Municipal Tort Claims Act[3], exempts municipalities[4] from liability for:

> Any claim based upon an act or omission of an officer or employee of the municipality, exercising due care, in the execution of a statute, ordinance, or regulation whether the statute, ordinance, or regulation is valid, or based upon the exercise or performance or the failure to exercise or perform

---

[3] Iowa Code Chapter 670 is also referred to as the Iowa Tort Liability of Governmental Subdivisions Act.

[4] Iowa Code §670.1(2) defines a "municipality" to include cities and other units of local government.

a discretionary function or duty on the part of the municipality or an officer or employee of the municipality, whether or not the discretion is abused.

Iowa Code §670.4(3).

The discretionary function exemption under Iowa law is virtually identical to that found in the Federal Tort Claims Act (FTCA), 28 U.S.C. § 2680(a). <u>Gordon v. Ottumwa Comm. Sch. Dist.</u>, 115 F. Supp. 2d 1077, 1084-85 (S.D. Iowa 2000) (citing <u>Goodman v. City of Le Claire</u>, 587 N.W.2d 232, 236 (Iowa 1998)). As such, the Iowa Supreme Court has determined that "federal decisions interpreting the federal immunity are persuasive authority in its interpretation of the municipal immunity provision." <u>Goodman</u>, 587 N.W.2d at 236. The Iowa Supreme Court has adopted the two-step analysis set out by the United States Supreme Court in <u>Berkovitz by Berkovitz v. U.S.</u>, 486 U.S. 531 (1988). <u>Id.</u> at 238.

For the discretionary function exemption to apply, it must first be shown that "the action is a matter of choice for the acting employee" and second that "the judgment is of the kind that the discretionary function exception was designed to shield." <u>Id.</u> at 237 (quoting <u>Berkovitz</u>, 486 U. S. at 536-37. With respect to the second prong, "the discretionary function exception applies only to conduct that involves the permissible exercise of policy judgment" and not where a statute, regulation or policy describes a mandatory course of action that the employee must follow. <u>Id.</u> at 536, 539.

"Arrest issues generally involve the permissible exercise of policy judgment and fall within the discretionary-function exception." <u>Cline v. Union County, Iowa</u>, 182 F. Supp. 2d 791, 800 (S.D. Iowa 2001) (citing <u>Deuser v. Vecera</u>, 139 F.3d 1190, 1195 (8th Cir. 1998)). <u>See also</u> <u>Smith v. State</u>, 324 N.W.2d 299, 302 (Iowa 1982) (holding that "law enforcement officers have no liability for mere negligence in the investigation of crime"); <u>Hildebrand v. Cox</u>, 369 N.W.2d 411, 416 (Iowa 1985) (extending the rule in <u>Smith</u> of non-liability of police officers investigating criminal activity when the target of the investigation has been charged and arrested to also include when the allegedly negligent

investigation results in no arrest); <u>Lamp v. City of Bettendorf</u>, 2000 WL 33363167 (S.D. Iowa 2000) (finding that police in Iowa do not have an actionable common law duty to the perpetrator of an alleged crime with respect to the conduct of a criminal investigation or the decision to make an arrest and thereby initiate criminal proceedings, and without a duty there can be no tort).

In Count I, Harrington has alleged only that Officer Bose was negligent. Officer Bose owed no duty to Harrington with respect to his arrest. Absent such a duty, there is no tort. Moreover, as set forth below, the court finds that Officer Bose had probable cause to arrest Harrington. Harrington has likewise provided no evidence that Officer Bose's actions leading up to the pumping of Harrington's stomach were taken pursuant to any mandatory statute, regulation, or policy. Defendants' motion for summary judgment on Harrington's negligence claim (Count I of the Amended Petition) is granted.

## 42 U.S.C. § 1983 - Qualified Immunity

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivations was committed by a person acting under color of state law." <u>West v. Atkins</u>, 487 U.S. 42, 48 (1988). As set forth above, Harrington alleges that he was illegally searched and seized, as there was neither a warrant nor reasonable grounds to either to arrest him or have his stomach pumped. Officer Bose contends that he is entitled to qualified immunity from Harrington's §1983 claim.

"Qualified immunity is 'an entitlement not to stand trial or face the other burdens of litigation.' " <u>Saucier v. Katz</u>, 533 U.S. 194, 200 (2001) (quoting <u>Mitchell v. Forsyth</u>, 472 U.S. 511, 526 (1985)). It is "available to government officials who prove their conduct did 'not violate clearly established statutory or Constitutional rights of which a reasonable person would have known.' " <u>Hill v. Scott</u>, 349 F.3d 1068, 1071 (8th Cir. 2003) (quoting <u>Harlow v. Fitzgerald</u>, 457 U.S. 800, 818 (1982)). Qualified immunity is not a defense to liability. <u>Saucier</u>, 533 U.S. at 200. In resolving qualified immunity

issues, the threshold inquiry is whether the facts as alleged and taken in the light most favorable to the party asserting the injury show that the officer's conduct violated a constitutional right? Id. "If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity." Id. at 201. If a constitutional violation could be made out, however, the second inquiry is whether the constitutional right was clearly established. Id. The "clearly established" question is a particularized inquiry, meaning that the "contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." Anderson v. Creighton, 483 U.S. 635, 640 (1987). "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." Saucier, 533 U.S. at 202. Summary judgment based upon qualified immunity is proper "[i]f the law did not put the officer on notice that his conduct would be clearly unlawful." Id.

"By virtue of its 'incorporation' into the Fourteenth Amendment, the Fourth Amendment requires the States to provide a fair and reliable determination of probable cause as a condition for any significant pretrial restraint of liberty." Baker v. McCollan, 443 U.S. 137, 142-43 (1979) (citing Gerstein v. Pugh, 420 U.S. 103 (1975)). "The Fourth Amendment right of citizens not to be arrested without probable cause is clearly established." Hill, 349 F.3d at 1072 (citing Habiger v. Fargo, 80 F.3d 289, 295 (8th Cir. 1996)). To prevail on this claim, Harrington must demonstrate that Officer Bose "(1) had no probable cause to arrest him, and (2) raise a genuine issue of material fact about whether reasonable officers would have known [defendant's] conduct would have violated the Fourth Amendment." Id. (citing Smithson v. Aldrich, 235 F.3d 1058, 1061 (8th Cir. 2000)).

"Probable cause for a warrantless arrest exists where facts known to the officers or about which they have reliable information are sufficient in themselves to warrant a man

of reasonable prudence and caution in believing that a crime has been or is being committed by the person to be arrested." Linn v. Garcia, 531 F.2d 855, 861 (8th Cir. 1976) (citations omitted). "It is not material that the person arrested may turn out to be innocent, and the arresting officer is not required to conduct a trial before determining to make the arrest." Id. (citing Morrison v. United States, 491 F.2d 344, 346 (8th Cir. 1974)); Smithson v. Aldrich, 235 F.3d 1058, 1064 (8th Cir. 2000) (noting that officers are not required to conduct a "mini trial" before making an arrest). "Each case involving a question of probable cause must be decided on its own facts." Linn, 531 F.3d at 861 (citing State v. Goings, 165 N.W.2d 366 (1969)). See also Smithson 235 F.3d at 1062 (noting that the standard of probable cause is "probability" and not a "prima facie showing" of criminal activity). "[L]aw enforcement officers are entitled to qualified immunity if they arrest a suspect under the mistaken belief that they have probable cause to do so - provided that the mistake is objectively reasonable) (citing Hunter v. Bryant, 502 U.S. 224, 228-29 (1991)). Thus, the "issue for immunity purposes is not probable cause in fact, but arguable probable cause." Id. (quoting Habinger v. City of Fargo, 80 F.3d 289, 296 (8th Cir.), cert. denied, 519 U.S. 1011 (1996)).

Sergeant Payne, the undercover officer, has ample experience and training in investigating drug crimes. Harrington does not argue to the contrary. On the night in question, Sergeant Payne called Officer Bose and told him that he had observed Harrington engage in what appeared to be a narcotics transaction. Harrington does not dispute that this communication took place. Officer Bose arrived on the scene and ultimately arrested Harrington. Harrington has offered no evidence that Officer Bose could not reasonably rely on Sergeant Payne's representations. Taking into consideration the totality of the circumstances, outlined above, the court concludes that Officer Bose had arguable probable cause to arrest Harrington and acted reasonably in so doing. Officer Bose is entitled to qualified immunity with respect to his arrest of Harrington.

With respect to the pumping of Harrington's stomach, the court finds that Officer Bose is not entitled to qualified immunity. In an analogous case, the United States Supreme Court found that deputy sheriffs' actions in directing a physician to pump the plaintiff's stomach, which produced two capsules of morphine, which were used to obtain the conviction of the plaintiff for illegal drug possession, violated the Due Process Clause of the Fourteenth Amendment. Rochin v. California, 342 U.S. 165, 172-173 (1952).

> [W]e are compelled to conclude that the proceedings by which this conviction was obtained do more than offend some fastidious squeamishness of private sentimentalism about combating crime too energetically. This is conduct that shocks the conscious. Illegally breaking into the privacy of the petitioner, the struggle to open his mouth and remove what was there, the forcible extraction of his stomach's contents - this course of proceeding by agents of government to obtain evidence is bound to offend even hardened sensibilities. They are methods too close to the rack and screw to permit of constitutional differentiation.
>
> It would be a stultification of the responsibility which the course of constitutional history has cast upon this Court to hold that in order to convict a man the police cannot extract by force what is in his mind but can extract what is in his stomach . . . Coerced confessions offend the community's sense of fair play and decency.

Id.

Crediting Harrington's allegations, as must be done for purposes of this motion, Officer Bose stated that he was taking Harrington to the hospital "to find some drugs." Officer Bose did not say anything about Harrington's personal safety or well-being. Harrington denied that he had swallowed any drugs. Thus, the inference to be drawn from Officer Bose's statement, i.e., was the pumping of Harrington's stomach intended to search for evidence, or was it an effort to ensure Harrington's well-being, is for the jury to decide. Harrington refused to consent to having his stomach pumped. Dr. Lamar made the decision to pump Harrington's stomach based upon information provided, at least

in part, by Officer Bose. Dr. Lamar testified that he would not have pumped Harrington's stomach unless the police officers were fairly adamant that Harrington had, in fact, swallowed rock cocaine. The record before the court is void of any evidence demonstrating that exigent medical circumstances required that Harrington's stomach be pumped immediately, before any monitoring of his physical condition occurred. See Stokes v. Porretto, 2006 WL 2844172 (S.D. Tex. 2006) (finding officer was entitled to qualified immunity for ordering that doctor pump pretrial detainee's stomach where the record demonstrated that the decision was objectively reasonable, given the detainee's medical condition, i.e., dangerous heart rate and blood pressure symptoms consistent with cocaine ingestion, irrational behavior, and the clearly established law requiring that pretrial detainees have their medical needs met). In Stokes, the plaintiff's stomach was not pumped until medical personnel had monitored his vital signs for some time, which continued to deteriorate, and it was not an effort to gather evidence for use in court. Id. at *14, 15. There is also insufficient evidence in the record before this court to demonstrate that Harrington was incapable of making an informed decision about his own medical care. Officer Bose, among others, held Harrington down while he was still handcuffed, so that the nurse could sedate him. While there is no evidence of a direct order from Officer Bose to Dr. Lamar to pump Harrington's stomach, Dr. Lamar testified that he would not have pumped Harrington's stomach unless the police had convinced him that there was reason to do so.

Officer Bose's motion for summary judgment on Harrington's § 1983 claim with respect to his arrest is granted. Officer Bose's motion with respect to the pumping of Harrington's stomach is denied.

<u>Municipal Liability - Policy or Custom</u>

A municipality cannot be held liable under § 1983 for an injury inflicted solely by its employees on a theory of respondeat superior. <u>Springdale Educ. Ass'n v. Springdale Sch. Dist.</u>, 133 F.3d 649, 651 (8th Cir. 1998). In the absence of conscience-shocking

conduct by a government official, a plaintiff seeking to impose municipal liability must identify either an "official municipal policy or a widespread custom or practice that caused the plaintiff's injury." Id. "The identification of an official policy as a basis upon which to impose liability ensures that a municipality is held liable only for constitutional deprivations 'resulting from the decisions of its duly constituted legislative body or for those officials whose acts may fairly be said to be those of the municipality.' " Id. (quoting Board of County Comm'rs of Bryan County, Okl. v. Brown, 520 U.S. at ---, 117 S. Ct. at 1388). "Although municipal liability for violating constitutional rights may arise from a single act of a policy maker, that act must come from one in an authoritative policy making position and represent the official policy of the municipality." McGautha v. Jackson County, MO, Collections Dept., 36 F.3d at 53, 56 (8th Cir. 1994). In this context, a "policy" means "an official policy, a deliberate choice of guiding principle or procedure made by the municipal official who has final authority regarding such matters." Mettler v. Whitledge, 165 F.3d 1197, 1204 (8th Cir. 2002).

Actions performed pursuant to a municipal "custom" not specifically approved by an authorized decisionmaker "may fairly subject a municipality to liability on the theory that the relevant practice is so widespread as to have the force of law." Id. To prevail on a "custom" claim, the plaintiff must prove:

(1) The existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by the governmental entity's employees;

(2) Deliberate indifference to or tacit authorization of such conduct by the governmental entity's policymaking officials after notice to the officials of that misconduct; and

(3) That plaintiff was injured by acts pursuant to the governmental entity's custom, i.e., that the custom was the moving force behind the constitutional violation.

Id. (citing Jane Doe "A" v. Special Sch. Dist. of St. Louis County, 901 F.2d 642, 646 (8th Cir. 1990)). If the Waterloo Police Department actually instituted a policy or custom which deprived Harrington of his constitutional rights, then he must illustrate that the department's actions in so doing were taken with "deliberate indifference as to its known or obvious consequences." Shrum v. Kluck, 249 F.3d 773, 779 (8th Cir. 2001) (quoting Brown, 520 U.S. at 398). See also Doe v. Gooden, 214 F.3d 952, 955 (8th Cir. 2000) ("The plaintiffs must show that the district officials received notice of a pattern of unconstitutional acts, demonstrated deliberate indifference to the acts, failed to take sufficient remedial action, and that such failure proximately caused the injury to the students.").

"Liability for an unconstitutional custom or usage, however, cannot arise from a single act." McGautha v. Jackson County, MO, Collections Dept., 36 F.3d 53, 56 (8th Cir. 1994) (citing Wedemeier v. City of Ballwin, 931 F.2d 24, 26 (8th Cir. 1991) ("a single deviation from a written, official policy does not prove a conflicting custom or usage") and Williams-El v. Johnson, 872 F.2d 224, 230 (8th Cir.), cert denied, 493 U.S. 871 (1989) (one occurrence of improper prison guard hiring contrary to official written policy "does not prove the existence of a" conflicting custom or usage)). See also Mettler, 165 F.3d at 1205 ("A single incident normally does not suffice to prove the existence of a municipal custom.").

Harrington has set forth no evidence whatsoever that the actions of Officer Bose, either with respect to Harrington's arrest or the pumping of his stomach, were taken pursuant to a policy or custom by the Waterloo Police Department. The Waterloo Police Department's motion for summary judgment on Harrington's § 1983 claim is granted.

Upon the foregoing,

IT IS ORDERED that defendants' motion for summary judgment is granted in part and denied in part. Harrington's negligence claim against Defendant S.D. Bose is dismissed with prejudice. Officer Bose's motion for summary judgment on Harrington's

§ 1983 claim relating to Harrington's arrest is granted. This claim is dismissed with prejudice. Officer Bose's motion for summary judgment on Harrington's § 1983 claim relating to the pumping to Harrington's stomach is denied. This claim shall go to trial. All claims against the Waterloo Police Department are dismissed with prejudice.

December 26, 2006.

JOHN A. JARVEY
Magistrate Judge
UNITED STATES DISTRICT COURT